**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JULIE MAYNARD, INC., doing business as Consolidated Vehicle Converters, | : : : : | Case No. 3:19-cv-00238 District Judge Thomas M. Rose Magistrate Judge Sharon L. Ovington |
| Plaintiff, | : : | |
| vs. | : : | |
| WHATEVER IT TAKES TRANSMISSIONS & PARTS, et al., | : : : : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATIONS[1]**

## I.   Introduction

Plaintiff Julie Maynard, Inc., doing business as Consolidated Vehicle Converters (Plaintiff or CVC), began this case with a seven-count Complaint naming seven Defendants. All claims against five Defendants have been dismissed; two Defendants remain. (Doc. #14). One of the remaining Defendants—Troy Eakins—seeks a dismissal of the only claim against him—Count Five, tortious interference with a contract between Plaintiff and Defendant Whatever It Takes Transmission & Parts, Inc. (WIT). Eakins argues that (1) this Court lacks personal jurisdiction over him, (2) Plaintiff's Complaint fails to state a plausible claim against him for tortious interference with a contract, and (3) Plaintiff failed to timely serve him with summons and copy of the Complaint. (Doc.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

#s 27, 31). Plaintiff opposes each ground for dismissal Eakins advances. (Doc. #28).

**II.  Background**

    **A.  The Complaint**

Plaintiff describes itself as an Ohio corporation with its principal place of business in Dayton, Ohio.

According to the Complaint, Plaintiff entered into a Memorandum of Understanding with Defendant WIT in 2012. The Memorandum of Understanding notes that Plaintiff "specializes in remanufacturing sealed torque converters (remanufactured converters) from a facility in Dayton, Ohio." (Doc. #2, *PageID* #70). The Memorandum of Understanding required Plaintiff to manufacture and sell to Defendant WIT at least the same number of converters (approximately) that it had sold to Defendant WIT in 2012. *Id*. at 63, ¶15. Plaintiff alleges, in part, that Defendant WIT breached the Memorandum of Understanding by failing to purchase the required number of converters from Plaintiff. *Id*. at 64, ¶17.

Defendant Eakins was not a party to the Memorandum of Understanding. He is, upon Plaintiff's information and belief, a resident of Florida. *Id*. at 63.

Plaintiff's tortious-interference claim against Eakins asserts that he "was aware" of the Memorandum of Understanding but acted tortiously:

> Defendant Eakins intentionally and maliciously procured Defendant WIT's breach of the Memorandum of Understanding by working with Defendant Duvall to have Defendant WIT purchase converters from a company in Chicago and not purchase enough converters from Plaintiff CVC to meet the 2012 standards required by the contract.

*Id*. at 66-67, ¶s 41-42. Defendant Duvall is Alan Duvall, a resident of Montgomery

County, Ohio.  Upon Plaintiff's information and belief, Duvall sits on Defendant WIT's Board of Directors.  *Id*. at 62, 65, ¶32.

The Complaint broadly professes that this Court has personal jurisdiction over Defendants due to their acts and failures to act in Montgomery County, Ohio.  *Id*. at 63, ¶11.  Plaintiff supports this conclusion and resists Defendant Eakins' Motion to Dismiss with the sworn affidavit of Tim Prugh and his attached Exhibits.

B.  **Prugh's Affidavit and Exhibits**

Prugh is Plaintiff's General Manager.  His affidavit and Exhibits shine light on Eakins' relationships with two other companies: Seal Aftermarket Products, LLC and Toledo Driveline, LLC.

Seal Aftermarket was formed in Florida in 2009 with its principal office address and mailing address in Dayton, Ohio.  Prugh states that Eakins is President of Seal Aftermarket.  But Prugh does not specify the date on which Eakins became Seal Aftermarket's President or the date on which Eakins first had some relationship with Seal Aftermarket.  It probably was not in 2009 when Seal Aftermarket was formed based on his absence from its Articles of Organization.

Prugh's affidavit and Exhibits reveal that Eakins' first tie to Seal Aftermarket emerged in March 2010 when he signed its Annual Report.  *Id*. at 279.  The Annual Report noted a change in Seal Aftermarket's principal place of business from Dayton, Ohio to Pembroke Park, Florida.  *Id*.

Toledo Driveline entered the picture several years later, in 2013, when Eakins formed it in Florida.  Toledo Driveline used the same address in Pembroke Park, Florida

3

that Seal Aftermarket used, although each was formed under its own Florida Articles of Organization.  *Id*. at 277-79, 281.  Toledo Driveline dissolved in 2014.  Its Articles of Dissolution notes, "company never began doing business."  *Id*. at 283 (capitalization omitted).  What, then, does this have to do with Ohio?  The attorney appointed to wind up Toledo Driveline (Kristin Finch) had an address in Dayton, Ohio.  *Id*. at 283.

Toledo Driveline was gone but not forgotten.  Five years later—in 2019—Eakins filed Articles of Organization in Florida for Toledo Driveline, LLC.  Eakins used the same Pembroke Park, Florida address he had previously used in 2010 for Toledo Driveline's principal place of business and mail.  *Id*. at 279, 284-85.

Eakins' use of the same Pembroke Park, Florida addresses for Toledo Driveline and Seal Aftermarket do not connect these companies to Ohio.  He did, however, borrow the name "Toledo."  Prugh and his Exhibits are silent on whether Toledo Driveline has any de facto connection to Toledo, Ohio (or Toledo, Spain for that matter), although the name certainly invites positive attention: Toledo, Ohio is known as The Glass Capital of the World.  Touring Ohio, http://touringohio.com/northwest/lucas/toledo/toledo.html (last visited Aug. 31, 2020).

Still, Prugh points to a more tangible Ohio connection: "Dun & Bradstreet has a branch listing for SAP [Seal Aftermarket Products] located at 1110 Napoleon Street, Fremont, Ohio 43420.  The branch of SAP located in Ohio appears to go by the name Toledo Driveline."  (Doc. #28, *PageID* # 272, ¶6 (citing Exhibit 2)).  And, recall, Eakins is Seal Aftermarket's President and Toledo Driveline's manager.  *Id*. at 271-72.

Lastly, Prugh asserts that Seal Aftermarket Products "now holds three separate

4

trademarks for TTK Toledo Trans-Kit stating that the first use was on November 30, 1990 …." *Id*. at 273, ¶11. He adds, "Toledo Driveline in Ohio sells TTK Toledo Trans-Kits. Defendant Whatever It Takes Transmission and Parts, Inc. also sells TTK Toledo Trans-Kits, at its three locations in Ohio." *Id*. at ¶12.

It is worth recalling Plaintiff's claim that Defendant Eakins tortiously interfered with the Memorandum of Understanding between Plaintiff and Defendant Whatever It Takes. He did this, Plaintiff alleges, by convincing Defendant WIT to purchase converters from a Chicago company and not to purchase the contractually required number of converters from Plaintiff.

### III. Personal Jurisdiction

Defendant Eakins claims that this Court lacks personal jurisdiction over him and, as a result, cannot adjudicate the only claim Plaintiff brings against him personally—tortious interference with the Memorandum of Understanding between Plaintiff and Defendant Whatever It Takes.

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal of a complaint for lack of personal jurisdiction. Plaintiff bears the burden of demonstrating personal jurisdiction exists over Defendant Eakins. *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). Because no evidentiary hearing has been held concerning personal jurisdiction, Plaintiff "'need only make a prima facie showing of jurisdiction.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996)). Plaintiff can accomplish this by "'establishing with reasonable particularity sufficient contacts

5

between [Defendant Eakins and Ohio] to support jurisdiction.'" *Id.* (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n,* 819 F.2d 434, 437 (3rd Cir. 1987)).

Where the parties' asserted facts diverge, the Court sticks with the plaintiff's version and declines to consider a defendant's contrary version. *See id.* Without an evidentiary hearing, the Court "consider[s] pleadings and affidavits 'in a light most favorable to Plaintiffs....'" *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)).

"[A] two-step inquiry … determine[s] whether a federal district court sitting in a diversity-of-citizenship case can exercise personal jurisdiction over a defendant: (1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006).

Defendant Eakins argues that personal jurisdiction over him is lacking because Plaintiff "has not alleged that [he] had any contact with Ohio …." (Doc. #27, *PageID* #231).

Plaintiff responds that the reasonable inferences drawn from Prugh's affidavit and attached Exhibits sufficiently connect Eakins with Ohio to call forth the Court's personal jurisdiction over him. Plaintiff finds the following connections:

1. Seal Aftermarket was originally formed in Ohio by an Ohio resident (Alan Duvall), and Eakins either purchased Seal Aftermarket from Duvall or hired Duvall to set it up for him;

2. In 2013, Eakins formed Toledo Driveline in Florida, using the same name as a branch of Seal Aftermarket in Ohio, and hired an Ohio attorney (Kristin Finch) to dissolve Toledo Driveline in 2014;

    3. Seal Aftermarket has a branch located at the same address Toledo Driveline uses in Freemont, Ohio; and

    4. Seal Aftermarket holds the trademark on a product that was originally created in Ohio and sells that product throughout Ohio.

*See* Doc. #28, *PageID #261*.

Plaintiff maintains that Eakins' "connection with Allan Duvall in Ohio is what led to his tortious interference with the contract between Plaintiff and Defendant WIT." (Doc. # 28, *PageID* #261). Plaintiff concludes that Eakins has transacted business in Ohio or caused Plaintiff's tortious injury in Ohio in satisfaction of Ohio's long-arm statute, Ohio Rev. Code § 2307.382(A)(1), (6). And Plaintiff argues that Eakins has the sufficient contacts with Ohio to satisfy the Due Process Clause.

Rather than directly challenging Plaintiff's arguments under Ohio's long-arm statute, Defendant Eakins focuses on the federal due-process aspect of personal jurisdiction. There is nothing amiss with this approach. "[I]f jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa." *Conn v. Zakharov*, 667 F.3d 705, 711-12 (6th Cir. 2012) (citations omitted). Thus, the federal due-process aspect of personal jurisdiction takes center stage.

The broad due-process issue is whether Plaintiff has made a prima facie showing that Defendant Eakins has sufficient minimum contacts with Ohio "so as not to offend traditional notions of fair play and substantial justice." *Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). To

7

resolve this issue, the oft-quoted triple header from *Southern Machine Co. v. Mohasco Industries, Inc.* applies:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir. 1968); *see Conn*, 667 F.3d at 713.

Defendant Eakins contends that Plaintiff fails to show he purposefully availed himself of the privilege of acting in Ohio because his allegations and evidence do not indicate that he *himself* created any contact with Ohio or, in other words, that he was actively and personally involved in any alleged contacts either Seal Aftermarket Products or Toledo Driveline had with Ohio.

Eakins convincingly builds this argument on *Flynn v. Greg Anthony Construction Co., Inc.*, 95 F. App'x 726 (6th Cir. 2003). The Sixth Circuit explains in *Flynn*, "[T]he mere fact that the court has personal jurisdiction over the corporate entities does not by itself imply that the court also has personal jurisdiction over their officers." *Id*. at 740 (citing *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir. 1974)). This rule, however, does not bar the exercise of personal jurisdiction over certain circumstances. "[W]here an out-of-state corporate officer 'is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.,* whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.'" *Id.*

8

(quoting *Balance Dynamics,* 204 F.3d at 698). Such active and personal involvement may expose a corporate officer to personal jurisdiction even if she "allegedly acted in a forum state in her official, rather than personal, capacity." *Id*. (citing *Balance Dynamics Corp. v. Schmitt Indus., Inc.,* 204 F.3d 683, 698 (6th Cir. 2000)).

Plaintiff's Complaint alleges that Eakins "procured Defendant WIT's breach of the Memorandum of Understanding by working with Defendant Duvall to have Defendant WIT purchase converters from a company in Chicago and not purchase enough converters from Plaintiff CVC …." (Doc. #2, *PageID* #67, ¶42). Accepting this allegation as true and construing it in Plaintiff's favor, Eakins *himself* took these actions even if he did so in his official capacity as Defendant WIT's President. But where did he take these actions? Eakins is Florida resident. There is no allegation in the Complaint or Prugh's affidavit and Exhibits that Eakins met with Duvall in Ohio for purpose of convincing Defendant WIT to buy converters from Chicago. There is also no indication of where Eakins and Duvall worked together. *Id*. at ¶3. And there is no allegation that Eakins travelled to or acted in Ohio to convince other corporate officers or board members of Defendant WIT—a Kentucky corporation with its principal place of business in Louisville, Kentucky, *id*. at 62, ¶2—to buy converters from a Chicago company.

Despite these absent allegations, Prugh's affidavit and attached Exhibits offer some hope for Plaintiff. Accepting Prugh's allegations as true, Seal Aftermarket was organized as a Florida LLC in 2009 with Duvall, an Ohio resident, as its managing member. (Doc. #28, *PageID* #s 277-78). At that time, its principal office address and mailing address were in Dayton, Ohio. Yet there is no specific allegation in the

9

Complaint or Prugh's affidavit that Eakins reached into Ohio for any purpose in 2009, and Seal Aftermarket's Florida Articles of Organization reveal no hint that Eakins played any role or reached into Ohio to create Seal Aftermarket in 2009. *See id.*

Plaintiff infers that Eakins either purchased Seal Aftermarket from Duvall when Seal Aftermarket had its principal place of business in Ohio or hired Duvall to set up Seal Aftermarket. Plaintiff's factual foundation for these inferences is Duvall's location in Ohio and Seal Aftermarket's location in Dayton, Ohio in 2009 and early 2010. But without more, these scant facts—accepting them as true—do not create a prima facie case of purposeful availment as to Eakins. Eakins' alleged request to Duvall to set up Seal Aftermarket with its principal place of business and mailing addresses in Dayton must be viewed together with the fact that Duvall established Seal Aftermarket as a Florida LLC—not an Ohio LLC. The Complaint and Prugh's affidavit and Exhibits do not add any further facts hinting at what Eakins actively and personally did in Ohio around the time of Seal Aftermarket's formation in 2009. Consequently, his request and Duvall's act of forming a Florida LLC with addresses at one location in Dayton, Ohio are attenuated activities that do not show Eakins purposefully availed himself of the privilege of acting or causing a consequence in Ohio. "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Reliance on a "defendant's 'random, fortuitous, or attenuated contacts'…" fall short of the necessary contacts. *Id.* (citation omitted).

The next connection Plaintiff finds between Eakins and Ohio occurred with his

10

purchase of Seal Aftermarket from Duvall soon after it was set up. This, however, was quickly or simultaneously (in March 2010) followed by Eakins' act of changing Seal Aftermarket's principal place of business to Pembroke Park, Florida. This act did not connect Eakins to Ohio but instead did the opposite: It disconnected him from Ohio by removing Seal Aftermarket from Ohio. And there is no indication in Prugh's affidavit or the March 2010 Annual Report that this caused a meaningful consequence in Ohio. Plaintiff's Complaint and evidence do not provide information about Seal Aftermarket's business activities in Ohio in 2009 or early 2010, and Plaintiff does not allege any business activities by Seal Aftermarket at its Ohio addresses. Such information is needed due to the speed with which Seal Aftermarket's addresses changed to Pembroke Park, Florida and because Seal Aftermarket was then (and remains now) a company formed and organized in Florida.

  Plaintiff next relies on the creation in December 2013 of Toledo Driveline with Eakins as its registered agent and manager. *Id*. at *PageID* #s 281-82. Although Toledo is obviously a city in Ohio, Toledo Driveline is an LLC with its principal office and mailing addresses in Pembroke Park, Florida. Toledo Driveline never began doing business before its dissolution in April 2014. *Id*. at 283. There is no allegation in Plaintiff's Complaint that Eakins himself engaged in any activity in Ohio at this time. Prugh's affidavit explains that Dayton, Ohio attorney Kristen Finch was appointed to wind up Toledo Driveline's business. Yet, because Toledo Driveline had not begun to do business at all, let alone in Ohio, appointing Finch was at most a fortuitous or attenuated contact with Ohio. As such, it is not enough to satisfy due process for the purpose of

11

invoking personal jurisdiction over Eakins.  *See Walden*, 571 U.S. at 286.

Plaintiff's remaining facts concerning personal jurisdiction focus on Seal Aftermarket's and Toledo Driveline's activities and presence (it was resurrected in 2019) in Ohio, including the branch in Fremont, Ohio, and Seal Aftermarket's trademarks on products it sells throughout Ohio.  But Plaintiff's Complaint and evidence omit information about any involvement or contact Eakins himself had with Ohio related to Seal Aftermarket's or Toledo Driveline's presence and activities in Ohio.  Again, his role as President of Seal Aftermarket and manager of Toledo Driveline without more do not suffice, even if Seal Aftermarket or Toledo Driveline has the minimum contacts needed to support the exercise of personal jurisdiction over it.  *See Flynn*, 95 F. App'x at 740.

Accordingly, for the above reasons, Defendant Eakins' Motion to Dismiss the sole claim against him (Count Five) for lack of personal jurisdiction is well taken.  And, with personal jurisdiction lacking, there is no need to determine whether Plaintiff's Complaint raises a plausible claim against him or whether his Complaint should be dismissed for untimely service.

## IT IS THEREFORE RECOMMENDED THAT:

Defendant Eakins' Motion to Dismiss Count Five of the Complaint for lack of personal jurisdiction (Doc. #27) be granted, and Count Five be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(2).

September 2, 2020                              *s/Sharon L. Ovington*
                                               Sharon L. Ovington
                                               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).